IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **FORTHEM, LLC,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 12-04047-CV-S-JTM** |
| ) | |
| **CITY OF CLEVER,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

# ORDER

The City of Clever, Missouri ("Clever"), like most municipalities, requires that new construction projects within the city limits obtain certain permits, including sewer permits allowing new structures to connect to the existing municipal sewer lines. In Clever, during the relevant time period, applicants for such sewer permits were required to pay a $1,500.00 sewer hookup fee. CLEVER CITY CODE § 500.110(5). In assessing the sewer hookup fee, Clever applied the fee "per building." To that end, on July 16, 1990, Clever enacted an ordinance defining a building as:

> a structure having a roof supported by columns or walls, intended, designed, used or suitable for use for the support, enclosure, shelter and protection of animals or property, and when separated by firewalls each portion of such structure shall be deemed a separate building.

CITY OF CLEVER ORDINANCE NO. 162. In addition, on March 13, 1995, Clever enacted another ordinance adopting the construction codes formulated by Building Officials and Code Administrators International, Inc. ("the BOCA Code"). CITY OF CLEVER ORDINANCE NO. 193. The BOCA code, in turn, included a definition of "Building" as:

> Any structure occupied or intended for supporting or sheltering
> any occupancy.  <u>For application of this code, each portion of a
> building which is completely separated from other portions by fire
> walls . . . shall be considered as a separate building</u>.

BUILDING OFFICIALS AND CODE ADMINISTRATORS NATIONAL BUILDING CODE § 202 (11th ed. 1990) (*emphasis added*).  As another court has noted:

> This section permits one building to be treated as two if a proper
> firewall is installed.

*Wilson v. Helton*, 2000 WL 228248, op. at 3 (Ohio App. [4 Dist.] 2000).

Duplexes constructed in Clever are required to be constructed with a firewall between the separate dwelling units.  As such, Clever charges two sewer hookup fees for the issuance of a sewer permit for new construction of duplexes.  Between 2006 and 2010, the plaintiffs herein allege that they were granted permits to construct duplexes in Clever, to wit: Forthem, LLC. [five duplexes]; Southwest Development, Inc. [one duplex]; Area-Wide Construction, Inc. [one duplex]; K. Randal Himes, LLC [six duplexes]; and C3 Investments, LLC [five duplexes].  The plaintiffs further contend that they were charged $3,000.00 per duplex for sewer hookup fees.

The plaintiffs have filed the present action pursuant to 42 U.S.C. § 1983 against Clever and several city officials[1] alleging that their constitutional rights of equal protection and due process were violated by the "double" sewer hookup fees.  The plaintiffs seek monetary damages as well as a declaratory judgment.  Presently pending before the Court is the defendants' motion for summary judgment [Doc. 19] and their motion for leave to file an amended answer [Doc. 29].  For the reasons set out herein, both motions are granted.

---

[1] The plaintiffs' lawsuit also names the current Mayor and current members of the Board of Aldermen in their official capacities as well as naming – in their individual capacities – the former Mayor [Trisha Elam] and the former constituency of the Board of Aldermen [Jarred King, Scott Hackworth, Wade Pearce, Brandon Gilmore, Chris Montgomery, and Scott Hacksworth].

2

Case 6:12-cv-04047-JTM   Document 37   Filed 04/22/13   Page 2 of 13

The Court will first take up the defendants' motion for leave to file an amended answer. The proposed amended answer seeks to an affirmative defense of statute of limitations under MO. REV. STAT. § 516.120. The request was filed after the deadline for amending pleadings set out in the scheduling order, after the close of discovery, and after the defendants had filed their motion for summary judgment. Nonetheless, the Federal Rules of Civil Procedure provide that amendments to the pleadings are to be liberally permitted:

> A party. . . may amend his pleading only by leave of Court or by written consent of the adverse party; and <u>leave shall be freely granted when justice so requires</u>.

FED. R. CIV. P. 15(a) (*emphasis added*). The courts that have analyzed the "justice" language in Rule 15 have concluded that:

> Under this policy, only limited circumstances justify a district court's refusal to amend the pleadings: undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.

*Sanders v. Clemco Industries*, 823 F.2d 214, 216 (8th Cir. 1987) (reversing a district court for denying leave to amend). The decision to permit a party to amend its pleadings is left to the discretion of the district court. *Humphreys v. Roche Biomedical Laboratories, Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993).

In opposing the motion for leave to amend, the plaintiffs argue undue delay (by pointing to the deadlines set forth in the scheduling order) and advance a vague argument with regard to unfair prejudice. As to the latter, the plaintiffs do not offer a single specific example of prejudice, but suggest that allowing the proposed amended answer would leave then with "little choice but to request a reopening of discovery." The plaintiffs do not argue that the defendants have sought leave to amend in bad faith nor do the plaintiffs argue that the amendment would be

futile. Balancing the interests of the parties, the Court concludes that justice is better served by permitting the defendants to file their proposed [AMENDED] ANSWER TO COMPLAINT.

In reaching this conclusion, the Court has given considerable emphasis to the fact that the proposed new answer raises no new "facts" and the additional claim of a statute of limitations is based on the allegations contained in the original PETITION. In addition, the substantive merits of the statute of limiations defense has been briefed by the parties in the summary judgment pleadings. Fuinally, in reaching its decision in this case, the Court was greatly influenced by the Eighth Circuit's opinion in *Carter v. United States*, 123 Fed. Appx. 253 (8th Cir. 2005).

In *Carter*, an injured pedestrian sued the United States under the FTCA after she fell on a sidewalk in front of a Post Office. Following the expiration of the deadline for seeking an amendment to the pleadings under the applicable scheduling order and the completion of discovery, the United States moved to dismiss the pedestrian's case because her complaint did not state a legal claim under Missouri law. In response, the pedestrian argued that her complaint was sufficient and, in the alternative, sought leave to file an amended complaint adding an entirely new cause of action against the United States.[2] The district court granted the motion to dismiss and denied the motion to amend, noting that the motion was untimely and the defendant would be prejudiced by the amendment (since the case would otherwise be dismissed).

On appeal, the Eighth Circuit affirmed the district court's ruling on the United States' motion to dismiss finding that "the complaint fail[ed] to state a viable cause of action." *Id*. at 258. However, the Eighth Circuit reversed the district court's ruling on the request to file an amended complaint.

---

[2] As noted, the plaintiffs indicated that permitting the filing of the amended answer would require them to seek to reopen discovery. The plaintiffs do not identify any specific additional discovery that would be required and the Court cannot discern any additional discovery that would impact arguments the merits for and against the application of the statute of limitations in this case under these facts.

4

> The district court, relying on [*Hammer v. City of Osage Beach*, 318
> F.3d 832 (8th Cir. 2003)], first denied [the pedestrian's] motion on
> the grounds of undue prejudice. *Hammer*, however, involved the
> denial of a request to file a second amended complaint. We have
> held "parties should usually be given at least one chance to amend
> their complaint." Because we prefer to have claims decided on the
> merits rather than on the pleadings, we conclude the district court
> erred in denying [the pedestrian] at least one opportunity to amend
> her complaint. We also note, the factual underpinnings for the
> claims asserted in the amended complaint are identical to those in
> the original complaint. Thus, we divine no undue prejudice to the
> [United States] in allowing [the pedestrian] to amend her
> complaint.

*Id*. at 259 (*quoting*, *in part*, *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir.1999)). Akin to *Carter*, this motion involves a <u>First</u> Amended Answer. Moreover, again similar to *Carter*, "the factual underpinnings for the claims asserted in the amended [answer] are identical to those in the original [answer]." Under the unique facts before the Court, the amended answer attached to the defendants' motion for leave is deemed filed and will be treated as an active pleading in this case forthwith.

Turning then to the defendants' motion for summary judgment, several grounds are asserted, including:

(1) the plaintiffs' claims are barred by the applicable statute of limitations;

(2) the defendants named in their individual capacities are entitled to either absolute immunity or qualified immunity; and

(3) the plaintiffs cannot establish any violation of a constitutional right to equal protection and/or due process.

The Court will address each contention in turn.

In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938 (1985), the United States Supreme Court resolved the issue of what statute of limitations period was applicable to an action filed pursuant to 42 U.S.C. § 1983. Desiring to resolve a split among the federal circuits, the Court

5

held that § 1983 claims are subject to a state's general tort personal injury statute. *Id.* at 280, 105 S.Ct. at 1949 ("Section 1983 claims are best characterized as personal injury actions. . . ."). In the aftermath of *Wilson,* the Eighth Circuit likewise has held the statute of imitations for general personal injury actions sounding in tort applies to suits for violation of civil rights under § 1983. *See*, *e.g.*, *Gaona v. Town & Country Credit,* 324 F.3d 1050, 1054–55 (8th Cir.2003). Accordingly, § 1983 claims brought under Missouri law are governed by the state's five-year statute of limitations for personal injury action, MO. REV. STAT. § 516.120.4. *See*, *e.g.*, *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011).

In this case, the plaintiffs filed their PETITION (originally in the Circuit Court of Christian County, Missouri) on February 6, 2012. Accordingly, the only § 1983 claims properly falling within the applicable statute of limitations are those accruing after February 6, 2007. In moving for summary judgment, the defendants provide evidence that the only sewer permit issued by Clever after February 6, 2007, was Permit 33-07 issued to Lance Pearce for a duplex being constructed at 606 W. Kimberly Ct. in Clever. The plaintiffs do not dispute this fact but argue that their constitutional claims accrued between "February 14, 2011 and March 15, 2011" when Clever refused to reimburse the plaintiffs for alleged "overcharging" of sewer hookup fees previously collected.

Under Missouri law, a right to bring suit "accrues and the statute of limitations is set into motion '[w]hen the <u>fact of damage</u> becomes capable of ascertainment. . . .'" *Bonney v. Envtl. Engineering, Inc.,* 224 S.W.3d 109, 116 (Mo. App. [S.D.] 2007) (*emphasis in original*). In that regard, "[d]amage is capable of ascertainment when it can be discovered or is made known, even if its extent remains unknown." *D'Arcy & Associates, Inc. v. K.P.M.G. Peat Marwick, L.L.P.,* 129 S.W.3d 25, 29 (Mo. [W.D.] App. 2004). The Missouri Supreme Court has further noted:

6

> [I]f the wrong done is of such a character that it may be said that
> all of the damages, past and future, are capable of ascertainment in
> a single action so that the entire damage accrues in the first
> instance, the statute of limitation begins to run at that time.

*Davis v. Laclede Gas Co.,* 603 S.W.2d 554, 556 (Mo.1980) (*en banc*) (*quoted by Wong v. Bann-Cor Mortg.*, 2013 WL 149709, op. at *5-6 (W.D.Mo. Jan. 14, 2013))

This rule has been consistently applied in § 1983 litigation. Thus, unlawful search claims are presumed to have accrued when the search occurred. *Wright v. Doe,* 400 Fed. Appx. 123, 124 (8th Cir. 2010) (*citing Johnson v. Johnson Cnty. Comm'n Bd.,* 925 F.2d 1299, 1301 (10th Cir.1991)). Similarly, when a party asserts that a governmental entity has unconstitutionally seized personal property, the parties' claims accrued on the date of the seizure. *Smith v. City of Jennings, Mo.*, 111 Fed. Appx. 856, 856 (8th Cir. 2004). In this case, applying the same rules, the Court concludes that the plaintiffs' constitutional claims accrued when they were required to – and did – pay $3,000 to Clever for sewer hookup fees per duplex. Inasmuch as those payments were made prior to February 6, 2007, any claims of constitutional deprivations allegedly attending those transactions are barred by the Missouri five-year statute of limitations.[3]

This ruling by the Court disposes of all of the plaintiffs' claims. However, because the ruling is dependent on the Court permitting the filing of an amended answer over the objection of the plaintiffs and because the alternative arguments asserted by the defendants are also meritorious, the Court – in the alternative – will address the issue of immunity and constitutional violation.

---

[3] Lance Pearce, who filed Permit 33-07, is not a named party to this action. The plaintiffs have submitted no evidence or argument suggesting that they have standing to assert any alleged constitutional harm suffered by Mr. Pearce and the Court notes that this case does not meet the test for "capable-of-repetition-yet-evading-review."

7

With regard to the § 1983 claims asserted against city officials sued in their individual capacities,[4] an argument is advanced that they are entitled to absolute immunity or, in the alternative, qualified immunity.

To the extent that the plaintiffs are basing any alleged constitutional claims on the actual enactments of ordinances and codes by these city officials sued in their individual capacities, the Court agrees that such claims would be subject to absolute legislative immunity.

> "[L]ocal legislators are ... absolutely immune from suit ... for their legislative activities." This immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity." Among other things, this immunity encompasses actions taken by members of a legislative body to vote on an ordinance and actions by a non-legislative official that are "integral steps in the legislative process," such as signing an ordinance into law.

*Hoekstra v. City of Arnold, Mo.*, 2009 WL 259857, op. at *9 (E.D. Mo. Feb. 3, 2009) (*quoting*, *in part*, *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 54, 118 S.Ct. 966, 970, 972 (1998)). *See also Robinson v. City of Raytown*, 606 S.W.2d 460, 466 (Mo. App. [W.D.] 1980) ("In enacting [the subject] Ordinance[,] defendant aldermen were acting in their official legislative capacity.").

---

[4] As previously noted, the plaintiffs also sued several city officials in their official capacities under § 1983. In a prior order, the Court pointed out to the plaintiffs:

> The parties should seriously examine the lawsuit as presently constituted and plead. Even with the substituted parties, the PLAINTIFFS' PETITION seemingly contains superfluous and improper claims. For example, a Section 1983 claim against a city official in his or her official capacity is utterly redundant when a lawsuit also contains a Section 1983 claim against the City itself. *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000); *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 (8th Cir.1999). . . . The plaintiffs might be well advised to consider amending their pleading.

ORDER of August 15, 2012 [Doc. 17]. Notwithstanding the Court's "advice," the plaintiffs have made no effort to amend their pleading. Accordingly, the claims asserted against all city officials in their official capacities are dismissed as superfluous, bordering on frivolous.

The legal issue, perhaps, is stickier with regard to the actions of the Mayor and Board of Aldermen in refusing to refund sewer hookup fees to the plaintiffs. *Compare Torres Rivera v. Calderon Serra*, 412 F.3d 205, 214 (1st Cir .2005) (actions to implement or administer legislation are not covered by absolute legislative immunity). While the Court is not convinced that such an action is tantamount to mere enforcement (for which legislative immunity does not apply), the Court is mindful of the admonition that in considering claims by government officials for both absolute and qualified immunity, qualified immunity "represents the norm." *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732 (1982). As such, the Court proceeds to the issue of qualified immunity without deciding the absolute immunity question.

It is well understood that "the doctrine of qualified immunity protects government officials . . . from individual liability . . . unless their conduct violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 473 (8th Cir. 2010) (*quoting*, *in part*, *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009)). From a more practical view, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Sutton v. Bailey*, 702 F.3d 444, 449 (8th Cir. 2012) (*quoting Messerschmidt v. Millender,* --- U.S. ---, ---, 132 S.Ct. 1235, 1244-45 (2012)).

When a defendant properly raises a qualified immunity defense, a plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Department*, 570 F.3d 984, 988 (8th Cir. 2009). With regard to these two requirements, the Supreme Court has articulated that:

> If no constitutional right would have been violated were the
> allegations established, there is no necessity for further inquiries
> concerning qualified immunity. On the other hand, if a violation
> could be made out on a favorable view of the parties' submissions,
> the next, sequential step[1] is to ask whether the right was clearly
> established.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). The defendants argue that neither showing has been made by the plaintiffs.

In response, the plaintiffs merely argue that the "[d]efendants' cannot be entitled to qualified immunity for violating their own ordinances." The plaintiffs' argument is based upon the fact that the zoning regulations for the City of Clever contain several definitions, including:

> BUILDING: A structure having a roof supported by columns or
> walls, intended, designed, used or suitable for use for the support,
> enclosure, shelter or protection of animals or property, and when
> separated by fire walls <u>each portion of such structure shall be
> deemed a separate building</u>.
>
> RESIDENCE, DUPLEX: A two-family residential use in which
> the dwelling units share a common wall (including, without
> limitation, the wall of an attached garage or porch) and in which
> each dwelling unit has living space on the ground floor and a
> separate ground floor entrance.
>
> RESIDENCE, TWO-FAMILY: A residential use consisting of a
> building containing two (2) dwelling units. If two (2) dwelling
> units share a common wall, even the wall of an attached garage or
> porch, <u>the dwelling units shall be considered to be located in one
> (1) building</u>.

---

[1] The Supreme Court subsequently has explained that the *Saucier* test is not rigid in its sequencing:

> [W]hile the sequence set forth [in *Saucier*] is often appropriate, it
> should no longer be regarded as mandatory. [Federal courts]
> should be permitted to exercise their sound discretion in deciding
> which of the two prongs of the qualified immunity analysis should
> be addressed first in light of the circumstances in the particular
> case at hand.

*Pearson*, 555 U.S. at 236, 129 S.Ct. at 818.

CITY OF CLEVER CODE §405.050.  The plaintiffs assert that these contradictory definitions in the <u>zoning</u> regulations [Title IV of the CITY OF CLEVER CODE] should inure to their benefit in how the city administers its <u>building</u> regulations [Title V of the CITY OF CLEVER CODE].

The Court finds, as a matter of law, the plaintiffs have failed to establish that the conduct of the city officials sued in their individual capacities violated clearly established constitutional rights of which a reasonable person would have known.  <u>At best</u>, the plaintiffs' arguments merely show that the city officials sued in their individual capacities made a reasonable but mistaken judgment in interpreting the city code.  The plaintiffs' arguments – even when afforded this tremendous latitude – fall well short of showing that the city officials sued in their individual capacities were plainly incompetent or knowingly violated the law.  The Court finds that those defendants sued in their individual capacity are entitled to qualified immunity and the claims asserted against them are dismissed.

Finally, with regard to the constitutional claims against the city itself, the plaintiffs allege a violation of both due process and equal protection.[5]  However, as set out below, the Court finds that the plaintiffs – based on the sparse summary judgment record before the Court – have failed to establish any constitutional deprivation so as to support a § 1983 claim.

---

[5]  The due process clause and equal protection clause are contained in the Fourteenth Amendment of the United States Constitution:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

11

Case 6:12-cv-04047-JTM   Document 37   Filed 04/22/13   Page 11 of 13

It is well settled that the Constitution, as construed over the years, encompasses two different types of due process claims – substantive due process and procedural due process. *County of Sacramento v. Lewis*, 523 U.S. 833, 841, 118 S.Ct. 1708, 1713 (1998). The plaintiffs do not articulate in their PETITION or their summary judgment pleadings which type of due process claim they are asserting. However, in opposing summary judgment, the plaintiffs advance only one argument in favor of a finding of a constitutional violation – namely, that another construction project that was initially charged more than one sewer hookup fee later had "excess" fees refunded, while the plaintiffs did not. On its face, then, the plaintiffs seem to be advancing a substantive due process argument (*i.e.*, the plaintiffs do not complain about the adequacy of the procedure afforded by Clever, merely the end result).

In its summary judgment pleadings, Clever explains the seemingly disparate treatment based upon the fact the other construction project receiving the refund of excess sewer hookup fees was for a commercial property that did not have a firewall separating the building. The plaintiffs do not dispute that the commercial building was not divided by a firewall, but do dispute that this was the reason given by the city at the time of the decision to refund excess sewer fees for the commercial project but deny their requests for refunds. The plaintiffs' argument is irrelevant.

The plaintiffs do not assert that they are members of any protected or suspect class nor do they claim that any fundamental rights are being harmed by Clever's actions. Accordingly, the relevant test in examining the city's actions is the "rational basis test" generally applicable to economic regulations that do not create suspect classifications or otherwise burden fundamental rights. *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 2387 (1981).

Under this test, this Court must uphold a legislative classification if it bears a rational relation to some legitimate governmental interest. *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627 (1996). Moreover, Clever need not have "actually articulated . . . the purpose or rationale supporting its classification" at the time a distinction was made. *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 2643 (1993) (*citation omitted*). Instead, this Court must uphold the city's distinction if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101 (1993). Finally, in applying this standard, the Court is mindful that such governmental classifications generally carry with them "a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel*, 452 U.S. at 331-32, 101 S.Ct. at 2387.

Applying these long-established standards, the Court concludes that the decision of Clever to charge two sewer hookup fees for duplexes based on the BOCA Code definition of "building" is a rational classification that does not offend either the equal protection clause or the due process clause of the United States Constitution. It is certainly rational for the city to try to apportion infrastructure costs based on dwelling units within a newly built structure.

For the foregoing reasons, it is

**ORDERED** that the DEFENDATS' MOTION TO FILE FIRST AMENDED ANSWER TO PLAINTIFFS' PETITION [Doc 29] is **GRANTED**. It is further

**ORDERED** that the City of Clever's MOTION FOR SUMMARY JUDGMENT [Doc. 19] is **GRANTED** and summary judgment is hereby entered in favor of defendants.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**
